UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GLENDA SEAY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:09-cv-0605 |
| | ) | Judge Sharp |
| v. | ) | |
| | ) | JURY DEMAND |
| FORTUNE PLASTICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court in this employment discrimination action is a Motion for Summary Judgment filed by Fortune Plastics, Inc. ("Defendant") on May 27, 2011 (Docket No. 60). Glenda Seay ("Plaintiff") filed a response in opposition to the Motion (Docket No. 81)[1], to which Defendant filed a reply (Docket No. 107).

In 2009, Plaintiff filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et al.* ("Title VII"), against Defendant, Plaintiff's former employer, and its managers and supervisors. Plaintiff asserted claims of gender discrimination, sexually hostile work environment, and retaliation, all of which led to her alleged constructive discharge from employment in June 2007, and Defendant's breach of the parties' 2005 Conciliation Agreement. Since filing this case, Plaintiff's initial state law claims for negligent and intentional infliction of emotional distress have been dismissed (Docket No. 30). In addition, the Court held that the individual defendants Keith Anderson, Eric Taylor, Robert Taylor, and Samantha Gammons could not, as a matter of law, be held liable on Plaintiff's Title VII claims. (*Id.*)

---

[1] The Court's analysis is slightly hampered due to Plaintiff's failure to comply with Local Rule 56.01(c) in her response to Defendant's Undisputed Material Facts. Further, the Court acknowledges Plaintiff's noncompliance with the page limitation set forth in Local Rule 7.01(a); however, despite consideration of Plaintiff's response in its entirety, the Court is unpersuaded.

1

# I. FACTUAL BACKGROUND

Construed in Plaintiff's favor, the relevant, supported facts are as follows:[2]

Defendant is a manufacturing company which has a facility located in Lebanon, Tennessee. In 1982, at the beginning of her employment with Defendant, Plaintiff worked as a Bag Machine Operator. Plaintiff was transferred to the Production Department in 1991 as a Shipping Clerk and several years later, Plant Manager Eric Taylor promoted Plaintiff to Shipping and Receiving Supervisor of the Production Department. Keith Anderson, General Manager of the Lebanon facility, approved Plaintiff's promotion. Throughout her employment, Plaintiff received good performance reviews and raises from her supervisors.

In May 2005, Plaintiff was demoted from her position as Shipping and Receiving supervisor. Subsequently, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging among other things, gender discrimination. During her employment, Plaintiff received a copy of Defendant's Employee Handbook containing Equal Employment Opportunity, Anti-harassment, and Open Door policies. Nonetheless, prior to filing her charge, Plaintiff had not complained to any member of management that she believed she had been discriminated, harassed, or retaliated against for any reason.

Through the EEOC's Conciliation Process, Plaintiff settled her charge against Defendant. On August 16, 2005, the parties entered into a Conciliation Agreement whereby Defendant agreed to reinstate Plaintiff to her Shipping and Receiving supervisor position at the same pay rate and with the same benefits as before. Upon her reinstatement, Plaintiff received three

---

[2] Unless otherwise noted, the facts are drawn from Defendant's statement of material facts and Plaintiff's response (Docket Nos. 62 & 78). Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

additional good performance reviews and two raises, all of which were approved by supervisors, Eric Taylor and Keith Anderson.

On or about June 1, 2007, Defendant's Lebanon facility began converting its ordering/shipping tracking software system from MBA to Axapta. In January 2007, supervisors, like Plaintiff, and other employees began training on Axapta. During the conversion process, employees for the Production Department were required to enter paperwork into MBA and then enter the same paperwork into Axapta. The dual entry of paperwork enabled Defendant to immediately utilize the data entered into the MBA system but also have the same data entered into Axapta in anticipation of the full software conversion in July 2007. The duplicate entry of paperwork essentially doubled the amount of work Plaintiff and her direct supervisor, Samantha Gammons, were required to perform during their shift.

Plaintiff missed a significant amount of time from work during the software conversion process, as she was absent from June 6 through June 12, 2007. As a result, Ms. Gammons had to work late each night. Ms. Gammons was frustrated that Plaintiff was working fewer hours while she was constantly working late each evening to ensure the paperwork was entered into both systems.

When Plaintiff returned to work on June 13, 2007, she and Ms. Gammons got into an argument over Plaintiff not wanting to stay late to finish the entry of paperwork into each system. Plaintiff got upset at Ms. Gammons because she believed Ms. Gammons was rushing her. Ms. Gammons said she was tired of staying late every night and wanted to go home at a reasonable hour. At some point during their argument, Ms. Gammons decided to call Eric Taylor because Plaintiff would not calm down.

When Mr. Taylor arrived, he told Plaintiff and Ms. Gammons that, before either of them could go home, all paperwork had to be entered into MBA and Axapta. Mr. Taylor also told Plaintiff she needed to put in the same number of hours as Ms. Gammons. Plaintiff claims she felt stressed, anxious, and pressured to learn Axapta, and told Mr. Taylor and Ms. Gammons something to the effect that she was "not going to take this." Plaintiff then grabbed her purse and left work before her shift was over. At no time during the June 13, 2007 incident did Mr. Taylor make any offensive or gender-related comments.

Plaintiff never returned to work after June 13, 2007, except to turn in her letter of resignation on June 25, 2007. At no time during her employment with Defendant did Plaintiff ever complain to any member of management that she believed she had been discriminated, harassed, or retaliated against for any reason. After Plaintiff's resignation in June 2007 and with Keith Anderson's approval, Eric Taylor hired Christine Willis to replace Plaintiff as Defendant's Shipping and Receiving Supervisor. Ms. Willis remains employed in this position. On June 30, 2009, Plaintiff filed this current employment discrimination action.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

#### A. Statute of Limitations

Defendant alleges that Plaintiff failed to file a timely charge with the EEOC. Therefore, any unlawful employment action that Plaintiff was or reasonably should have been aware of 300 days prior to Plaintiff filing her charge are time barred. (Docket No. 61 at 5). Title VII provides that to maintain a claim against an employer in a deferral state, an employee must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). To support its contention, Defendant provides the dates of March 27 and 28, 2007[3] as 300 days prior to the January 22, 2008 date on which Plaintiff filed her charge.

---

[3] Throughout Defendant's pleadings, it references conflicting dates (March 27th and 28th) as the date on which any prior claims are time barred. Upon calculating 300 days prior to January 22, 2008, the Court concludes that the proper date is March 29, 2007. However, the exact date is not of great concern since neither party has identified any event which occurred during this three day window.

5

Plaintiff attempts to evade the statute of limitations cut off by arguing that the continuing violation doctrine preserves all her claims.

The continuing violation doctrine states that when "there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 829 (6th Cir. 2000). If a continuing violation is shown, "a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Id*.

The Sixth Circuit recognizes two ways in which a continuing violation may be shown. First, when "the plaintiff can show prior [wrongful] activity that continues into the present," and, second, "the plaintiff can show a longstanding and demonstrable policy of discrimination." *Bowerman v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. Local No. 12*, 646 F.3d 360, 366 (6th Cir. 2011). The Sixth Circuit held that while the continuing violation doctrine applies in hostile environment Title VII discrimination actions, it does not permit recovery for discrete acts of discrimination that occurred outside the statutory period. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Here, the Court concludes that the allegedly discriminatory actions that took place prior to March 29, 2007 are indeed discrete acts of which Plaintiff was immediately aware when they occurred. Furthermore, Plaintiff has presented no evidence of a longstanding policy of discrimination. The Court holds, therefore, that neither continuing violation exception is applicable and all claims based on events prior to March 29 2007 are time barred.

Moreover, the parties' Conciliation Agreement presents an additional obstacle. Plaintiff's previous complaint for workplace discrimination against Defendant was resolved by a

settlement agreement in August 2005. Any workplace issues through this date were presumably addressed by the parties' Conciliation Agreement and cannot now be re-litigated. For the foregoing reasons, the Court holds that any of Plaintiff's claims for any unlawful employment action that Plaintiff was or reasonably should have been aware of prior to March 29, 2007 are time barred and will not be considered.

**B. <u>Gender Discrimination Claim</u>**

To establish a prima facie case of unlawful gender discrimination, Plaintiff must show that "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

In the absence of direct evidence, courts analyze Title VII claims using the evidentiary framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Plaintiff is unable to prove discrimination by the use of direct evidence. Where a plaintiff must prove discrimination by the use of indirect, rather than direct, evidence, she must submit evidence from which a reasonable jury could conclude both that she has established a prima facie case of discrimination and that Defendant's "legitimate, nondiscriminatory reason" for its action, if any, is pretext for unlawful discrimination. *Id*. at 802-05.

Plaintiff clearly satisfies the first element of her prima facie case. However, the second element is more problematic. Based upon Plaintiff's Amended Complaint and her deposition testimony, the allegedly adverse actions that Plaintiff claims to have suffered are: (i) Eric Taylor yelled at her on June 13, 2007; (ii) she was denied vacation time when Robert Taylor was not;

(iii) she was treated less favorably than Wanda Amos and Bonnie Dishman, both females; and (iv) Wanda Amos told her that employees reported to management false accusations about Plaintiff's job performance to get her fired. As an initial matter, Plaintiff's claim about what Wanda Amos allegedly told Plaintiff is inadmissible hearsay on which the Court cannot rely. Nevertheless, there is no evidence that any false accusations were reported much less resulted in an adverse employment action.

Plaintiff's claim of being treated less favorably than Wanda Amos and Bonnie Dishman is time barred (Docket No. 62-1 at 29-30 and 80-82). Even if Plaintiff's claim were within the statute of limitations, Plaintiff fails to point to any adverse employment action.

"An adverse employment action in the context of a Title VII discrimination claim is a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'" *Arnold v. City of Columbus*, No. 2:08-cv-0031, 2011 WL 1303593 at * 11 (S.D. Ohio Mar. 31, 2011) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007)). For example, "'a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities'" each individually exemplifies a materially adverse change in the terms and conditions of plaintiff's employment. *Id.* (quoting *Allen v. Mich. Dept. of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)). However, as the Sixth Circuit explained, "[n]ot every act affecting an individual's employment can be considered an adverse employment action." *McMillian v. Potter*, No. 04-1607, 2005 WL 1140629, at *3 (6th Cir. May 11, 2005) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

Next, Mr. Taylor's conduct on June 13, 2007 is not an adverse employment action. One of the elements of a prima facie Title VII discrimination claim is that a plaintiff suffered an

8

adverse employment action, which may be established by "demonstrating that she was constructively discharged." *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001).

To clarify, Plaintiff's constructive discharge claim is not a "freestanding federal cause of action." *Bryant v. Skyline Properties, Inc.*, No.3:05-CV-2503-G, 2006 WL 708647 at *2 (N.D. Tex. Mar. 20, 2006). While Plaintiff may include constructive discharge as "part of her overall Title VII claim against [Defendant]", Plaintiff's allegation is considered as a part of her discrimination, hostile work environment, and retaliation claims. *Id.* Thus, constructive discharge is "not a separate ground for relief, but would rather factor into the [recovery]". *Kalinoski v. Gutierrez*, 435 F.Supp.2d. 55, 74 (D.D.C. 2006). Since summary judgment will be granted for Plaintiff's discrimination, hostile work environment, and retaliation claims, the Court need not address the issue of Plaintiff's potential recovery based on a claim of constructive discharge and its only import is the extent to which it could operate as an "adverse action" for analysis of those claims.

"'To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.'" *Bryant v. Skyline Properties, Inc.*, No. 3:05-CV-2503-G, 2006 WL 708647 at *2 (N.D. Tex. Mar. 20, 2006) (quoting *Barrow v. New Orleans Steamship Ass'n.*, 10 F.3d 292, 297 (5th Cir. 1994)). Here, Mr. Taylor never told Plaintiff she was losing her job or gave Plaintiff any indication that she should feel "compelled to resign." The facts do not support a finding of constructive discharge. Consequently, Plaintiff failed to show that she was subjected to adverse employment action in the form of constructive discharge.

Furthermore, Plaintiff has not presented any evidence that Mr. Taylor's conduct created a materially adverse change in the terms or conditions of her employment. A materially adverse

change in employment conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996). "The Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 462 (6th Cir. 2000). The Sixth Circuit has reasoned that "[i]f every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999). A "'bruised ego' is simply not enough to constitute an adverse employment action." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004). Based upon the facts presented to the Court, Mr. Taylor's conduct towards Plaintiff on June 13, 2007 does not qualify as adverse action.

Even if this Court were to assume that Mr. Taylor's conduct constituted an adverse employment action, Plaintiff is unable to satisfy the fourth element of a prima facie case for discrimination. After Plaintiff's resignation in June 2007, and with Keith Anderson's approval, Eric Taylor hired Christine Willis to replace Plaintiff at Defendant's Shipping and Receiving Supervisor. As a female, Ms. Willis clearly is within the protected class and Plaintiff has not presented any evidence that similarly situated non-protected employees were treated more favorably.

Plaintiff's allegation that she was denied vacation time when Robert Taylor was allowed to take time off may qualify as an adverse employment action. If true, it would clearly represent a material adverse change in the terms and conditions of her employment; although, it appears Plaintiff did ultimately get her requested vacation. Nevertheless, even assuming the vacation timing is an adverse action and she was qualified for the position, Plaintiff is unable to satisfy the

fourth element of a prima facie case because Robert Taylor and Plaintiff are not similarly situated. In order for a plaintiff to be considered similarly situated to another employee, "that employee must be similar in all 'relevant' aspects to the plaintiff." *Corel v. CSX Transp., Inc.*, 378 F. App'x 496, 502 (6th Cir. 2010) (quoting *Knox v. Neton Auto Prods. Mfr., Inc.*, 375 F.3d 451, 458 (6th Cir. 2004)). For example, "deal[ing] with the same supervisor, hav[ing] been subject to the same standards, and hav[ing] engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it" all constitute 'relevant' aspects. *Id*. (quoting *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir.1998)).

Here, Robert Taylor is the head of the Production Department and Plaintiff is a supervisor in the Production Department. (Docket No. 62-1 at 33). Unlike Plaintiff, at the time Robert Taylor took vacation, he had completed Axapta training and also trained his employees. (Docket No. 78 ¶ 83). Plaintiff was also allowed to take several days of vacation during the software conversion process; however, unlike Robert Taylor, she took vacation time before fully understanding Axapta or training her employees. It is apparent from the differences highlighted herein that Robert Taylor and Plaintiff are not similarly situated. For all these reasons, Plaintiff cannot establish a prima facie case of discrimination based on this particular claim.

Even if Plaintiff could successfully establish a prima facie case of discrimination based on this claim, Plaintiff has the additional burden of proving that Defendant's legitimate, nondiscriminatory reason justifying its actions is pretextual. "Once a Title VII plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Kalinsoki*, 435 F.Supp.2d 55 at 62. (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (1973)). "If the defendant employer has

produced sufficient evidence for a nondiscriminatory justification for its actions…the burden of production shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination or retaliation." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Defendant echoes the above mentioned list of dissimilarities between Robert Taylor and Plaintiff also as legitimate, nondiscriminatory reasons to justify its actions. Furthermore, Plaintiff has not presented any evidence from which a reasonable jury could conclude that Defendant's legitimate, nondiscriminatory reasons are pretextual. Based on the foregoing analysis, summary judgment will be granted on this claim.

### C. Sexual Harassment/Hostile Work Environment Claim

In order to succeed on a hostile work environment claim, a plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she was subjected to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer is liable." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). In this case, Plaintiff has not come close to showing that she was subjected to sexual harassment sufficient to create a hostile work environment.

A hostile work environment arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). To determine whether workplace harassment is sufficiently severe or pervasive, the Court is to consider the "totality of the circumstances." *Williams v. General Motors*, 187 F.3d 553, 562 (6th Cir. 1999). The Court is also required to utilize both an objective and subjective test: "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must

subjectively regard the environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). "Among the factors to be considered are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005) (quoting *Harris*, 510 U.S. at 23).

In essence, work environment harassment involves repeatedly offensive conduct that transforms the workplace into an "abusive working environment." *Hunter v. Sec. of the Army*, 565 F.3d 986, 994 (6th Cir. 2009). During her deposition, Plaintiff claims that she heard about employees placing condoms on tow lifts sometime prior to 2005, she was allegedly subjected to pornographic material sometime in or around 2006, and she was yelled at by Mr. Taylor in June 2007. Apart from these claims, two of which are time barred, Plaintiff's Amended Complaint is void of any specific incidents giving rise to a hostile work environment.

Even if all of these contacts were considered, no reasonable jury could conclude that Plaintiff was subject to a work environment that was permeated with discriminatory intimidation, ridicule, and insult. Nor could a reasonable jury conclude that any alleged harassment was severe or pervasive enough to alter the conditions of Plaintiff's employment, as she has presented no evidence that the contacts with Defendant made it more difficult for her to do her job in the Production Department. Summary judgment will be granted on this claim as well.

### D. Retaliation Claim

A plaintiff "may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 542 (6th Cir. 2008). Because the Court determines that Plaintiff failed to set forth direct evidence of retaliation, the Court turns to whether Plaintiff

has set forth circumstantial evidence "under the same *McDonnell Douglas/Burdine* evidentiary framework that is also used to assess claims of discrimination." *Id*.

Plaintiff must first establish a prima facie case of retaliation by showing: (1) she engaged in protected activity; (2) this exercise of protected rights was known to Defendant; (3) Defendant thereafter took adverse employment action against her, or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 791 (6th Cir. 2000). "If and when a plaintiff has established a prima facie case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id*. at 792-93 (citation omitted). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id*. at 793 (citation omitted).

Plaintiff claims she was retaliated against after she filed her May 2005 charge. Plaintiff has not shown that Defendant took adverse employment action against her, nor has she shown that she was subjected to severe or pervasive retaliatory harassment by a supervisor much less that there is a connection to the 2005 protected activity. Summary judgment will be granted on this claim as well.

### E. Breach of Contract Claim

Plaintiff alleges that Defendant is in breach of the parties' Conciliation Agreement by discriminating, harassing, and retaliating against her. In order to succeed on a breach of contract claim, a plaintiff must demonstrate "(1) the existence of an enforceable contract; (2) nonperformance of the contract amounting to a breach of the contract; and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn.

Ct. App. 2005). In an effort to avoid summary judgment on this claim, Plaintiff relies upon all her other causes of action in an attempt to show Defendant's breach of the Conciliation Agreement. Because the Court has found a complete lack of evidence upon which to base the previously analyzed claims, summary judgment is appropriate for the breach of contract claim as well.

## IV. CONCLUSION

Based upon the foregoing, the Court will enter an Order granting Defendants' Motion for Summary Judgment (Docket No. 60) and this action will be dismissed with prejudice.

An appropriate Order will be entered.

*[signature: Kevin H. Sharp]*

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE